## JONES v. CONZELMAN

---

(May 21, 1928. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625.**
Only questions of fact are involved and the decree of the trial judge being manifestly correct, is affirmed.

Appeal from the Civil District Court. Hon. M. M. Boatner, Judge.

Action by Mrs. Eva Francis Jones against Harold Conzelman.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Marx & Levy & Anna Judge Veters, of New Orleans, attorneys for plaintiff, appellant.

P. M. Milner, of New Orleans, attorney for defendant, appellee.

JONES, J.  Plaintiff alleges that her deceased husband, on the night of December 8, 1925, at 7 o'clock p. m., while attempting to cross Louisiana Avenue, from the neutral ground on the downtown side of Louisiana Avenue at South Liberty Street, was knocked down and killed by the defendant, Harold Conzelman, who was driving rapidly and negligently.

Defendant admitted the accident, but averred that the plaintiff attempted to cross without looking, and without any warning to the defendant, directly in front of defendant's car, and so close as to make it impossible for defendant to avoid running him down, although defendant, who was driving carefully, stopped his car immediately and took the injured man to the hospital.

The defendant pleads, only in the alternative, contributory negligence.

There was judgment for defendant and plaintiff has appealed.

Dr. Segue, (colored) dentist, as witness for plaintiff testifies as follows:

"He stopped his car on the neutral ground for a street car to pass and stood at a standstill until the passengers were discharged from the car.  Jones, who had crossed from the upper sidewalk of Louisiana Ave. with a colored woman, Bessie Walker, waited on the lake side of neutral ground until the street car going toward the lake stopped and then stepped off of the curb of the neutral ground into the roadway, in the direction of the downtown sidewalk while the street car was at a standstill, letting off and taking on passengers; Jones was struck by left side of defendant's car; though defendant was not speeding, he was probably going fifteen to twenty miles per hour, 'hugging the neutral ground,' i. e., about seventeen inches from it; Jones, who was found unconscious half way under the auto with skull crushed, died in a few hours; though a colored man, he had 'lots of sense and reading' and was a collector for the Unity Insurance Co.

with which his wife was connected; did not see a car parked on the lower side of the roadway, although his headlights, the street lights and street car lights were burning."

On cross-examination, he said street car passengers were "jumping and jamming," was not watching the auto but the street car and, therefore, he was only estimating speed by distance in which auto stopped, heard the grinding of the brakes, saw only two people in defendant's car, identifies defendant and McMahon in the courtroom as the two men in the auto and denies positively that he had ever seen McMahon and Kairdoff, the other two white men alleged to have been in the auto with defendant; he helped put Jones in the car and would certainly have seen them if they had been in the car at the time.

Bessie Walker, colored, a sister-in-law of plaintiff, testifies for him as follows:

The street car was stopped and was discharging passengers; she and Jones were standing near the rear of the street car on the neutral ground about three feet from the car; Jones said something to her and stepped off the neutral ground, facing straight downtown, just in front of the coming auto and was knocked down instantaneously before he heard her scream of warning; she did not known whether Jones looked before he stepped into the street or not, but she had seen the auto a block away at Franklin Street; auto was coming fast, very close to neutral ground curb; street light was burning but she heard no horn; saw no cars parked there on lower roadway; Jones was lying between front and back wheels of auto, she saw only two people in auto.

On cross-examination, she says she and Jones had been waiting alone for the street car three or four minutes, he left her after the car stopped, as she had in-

tended to board it; didn't know how many people got off, as she was standing sideways; didn't notice headlights of oncoming auto.

Another witness for plaintiff, Earl De Joie, states that he was on the uptown side of the neutral ground where street car going out stops at the time of the accident, but he did not see Dr. Segue's automobile on the neutral ground; there is a barber shop on the downtown river corner of Louisiana Avenue and S. Liberty Street and a cottage on the lake side and Jones was struck in front of cottage and the street car had just pulled off; auto was travelling pretty fast in a foot of neutral ground; two or three people got out of the street car. He did not render any help or give his name to the policeman who came after the ambulance arrived; later accidentally met the lady and gave his name; only two people were in the auto.

Ida Mouton, colored, another witness, testifies she was in middle of block between Franklin and Liberty Streets, but did not see the accident; they were taking Jones up when she arrived, and a street car was stopped there; a great many boys were around there, auto was about five feet from neutral ground and about nine feet from lower sidewalk; heard no horn; knew Dr. Segue before the accident, as he had pulled teeth for her, but she did not see him or his car there, thought she saw them put Jones into defendant's car.

Mrs. Eva Francis Jones, plaintiff, widow of decedent, testifies as to her funeral expenses, salary of her husband, etc.

Defendant, Thomas J. McMahon, Lawrence McCarthy and Wm. J. Cardoff, all testify substantially as follows:

They were driving in an open Cadillac car about twelve or fifteen miles per hour; plaintiff's husband ran from the barber shop on the river corner, diagonally across the road, from behind a parked automobile so closely in front of the oncoming car that it was impossible to avoid striking him; his back was partly turned toward the car and he was struck by the right front fender and knocked down; the car was stopped almost immediately and Jones, who was lying partly under the right running board, was placed on the back seat and carried immediately to the Charity Hospital where he died that night; the auto, which was running within three to five feet of neutral ground curb, did not slow down at the crossing as it had already passed the street car further back in the block and no one was crossing the well-lighted street, car brakes were in good working order, did not see Dr. Segue there.

The motorman of the passing street car, Leninger, says the auto passed his street car in the middle of the block; as he approached the corner of S. Liberty Street, saw a woman waiting for the car, a colored man ran from the downtown side of the banquette, doesn't know whether he ran in front or on the side as the hood of the machine stopped his view.

It is a rule of the company, if the accident happens ten feet away from the car, conductor must make out a report, but no such report was made here, as car was forty-five or fifty feet away from the accident; couldn't tell whether man ran straight or diagonally, though Jones ran from downtown lake corner, stopped his car for the woman to get on, but she didn't do so and he went on, saw no automobile on uptown street car track waiting to cross.

The above analysis shows that the witnesses for plaintiff and defendant contradict each other on practically every detail of the accident. Although plaintiff's able

attorney argued strenuously in the lower court, that defendant's negligence in driving so close to the neutral ground in violation of traffic ordinance was the proximate cause of the accident, the judge found, without considering defendant's evidence, that the deceased was guilty of contributory negligence because plaintiff's witnesses testified that he had stepped without looking from the neutral ground immediately in front of an oncoming automobile. Here the former argument is again made with the additional contentions that the evidence does not show that the deceased stepped from neutral ground without looking in front of an oncoming automobile and that the evidence of defendant's witnesses is so contradictory as to be negligible.

As plaintiff's testimony inevitably convicts the deceased of either stepping without looking or deliberately attempting to commit suicide, we accept the conclusion of the trial judge on this point, as the more probable.

However, we find that the evidence of defendant is more consistent and more probable than that of plaintiff. The story of defendant and the other three occupants of his car is confirmed by the testimony of the motorman in all essentials. If the story of plaintiff's witnesses were correct, we must believe that Bessie Walker, the sister-in-law, who had seen the Cadillac coming at a fast speed close to the neutral ground for at least two hundred feet, allowed Jones without warning to step in front of the car and that the conductor in violation of the rules of the company and all the incoming and outgoing passengers in violation of every sympathetic impulse deliberately left the scene without tending aid to the dying man. Even if these statements were not contradicted by anyone, we should hesitate to believe them as contrary to the dictation of common sense and every day experience, but when our natural incredulity is buttressed by the contradicted statements of five apparently truthful witnesses, assurance is made doubly sure.

We conclude that plaintiff has entirely failed to prove her allegations and that her petition should be dismissed.

For above reasons the judgment is affirmed.